IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO

IN RE:

LUIS M. RUIZ RUIZ

    Debtor(s)

--------------------------------------------------------
LUIS M. RUIZ RUIZ

    Plaintiff

      V.

COMMONWEALTH OF PUERTO RICO,
THROUGH SECRETARY OF JUSTICE,
INÉS DEL C. CARRAU MARTÍNEZ; PR
DEPARTMENT OF AGRICULTURE,
THROUGH ITS SECRETARY, AGRO.
CARLOS ALBERTO FLORES ORTEGA;
OFFICE FOR THE REGULATION OF THE
DAIRY INDUSTRY (ORIL) THROUGH
ITS ADMINISTRATOR JORGE A.
CAMPOS; JORGE CAMPOS MERCED IN
HIS PERSONAL CAPACITY, HIS WIFE
VANESSA L. DIAZ RODRIGUEZ, AND
THE LEGAL PARTNERSHIP COMPOSED
BY THEM

    Defendants

Case No. 15-04548 (MCF)

Chapter 12

Adversary Proc. No. 20-00137 (MCF)

## OPINION AND ORDER

The court is faced with the legal issue as to whether the automatic stay was violated by the Defendants by scheduling a public auction of the Plaintiff's milk quota after administrative proceedings culminated in a final judgment that revoked the Plaintiff's dairy license. Upon careful review of the parties' motions for summary judgment, the court finds that there was a violation of the automatic stay.

## I.     UNDISPUTED FACTS AND PROCEDURAL HISTORY

The parties agree on the facts. The Plaintiff, Luis Manuel Ruiz Ruiz, is a chapter 12 debtor that filed for bankruptcy on June 16, 2015. While in bankruptcy, co-defendant Puerto Rico Milk Industry Regulatory Office (known by its acronym ORIL), revoked the Plaintiff's dairy farmer license in 2018 for unlawful practices in the production of milk. The examiner's official report submitted during ORIL's administrative adjudicative process deemed that this revocation sought to protect the public's health. Docket No. 46-1, at 17. The Plaintiff exhausted appellate remedies in Puerto Rico's appellate courts to no avail. After ORIL's decision to revoke the license was final, firm and unappealable, ORIL then pursued enforcement of its administrative judgment against the Plaintiff's milk quota by scheduling a public auction once the Plaintiff did not heed to its warning to sell milk quota or face a public auction.

The Plaintiff's milk quota served as a collateral to creditor ACM CCSC OB VII (CAYMAN) Asset Company. ORIL's Administrator, co-defendant Jorge Campos Merced, contacted ACM to seek the payoff balance of the loans guaranteed by the quota. Docket No. 46-9. ORIL informed the Chapter 12 trustee that it would be selling the milk quota in a public auction. On December 3, 2020, ORIL's Administrator issued a "Notice of the Process to Sell Quota by Public Bid." The "Notice" was not filed in the bankruptcy case. This adversary proceeding ensued. The Plaintiff stopped the sale of the milk quota by filing a temporary restraining order that was granted by the bankruptcy court. Docket No. 26.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is available if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010).  When both parties move for summary judgment, each party must carry its own burden of proof as the moving party in its cross motions and as the nonmoving party in response to the other party's motion. Wells Real Estate Inv. Trust II, Inc., 615 F.3d 45, 51 (1st Cir. 2010). If there are no disputed material facts, only one party is entitled to judgment as a matter of law. Encanto Rests., Inc. v. Aquino Vidal (In re Cousins Int'l Food Corp.), 553 B.R. 197, 205 (Bankr. D.P.R. 2016).

This matter is appropriate for summary judgment disposition as there are no material facts in dispute and it is a matter of law. In re Colarusso, 382 F.3d 51 (1st Cir. 2004) (citing Celotex, 477 U.S. at 322-323); Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

2

### III. PARTIES' CONTENTIONS

The Plaintiff alleges that the milk quota is property of the estate and if the defendants wanted to dispose of his quota, they should have moved for permission from the bankruptcy court to lift the stay, pursuant to 11 U.S.C. § 362(d).[1] Because the defendants failed to obtain permission from the bankruptcy court, it violated the automatic stay under § 362(a)(3). In turn, the defendants respond that under the automatic stay's police powers exception under § 364(b)(4), they can sell the Plaintiff's milk quota in a public sale auction in compliance with ORIL's Regulation 8660 of November 12, 2015, Section 7(C).

At the hearing on the motions for summary judgment, the court ordered the parties to file briefs regarding the qualified immunity of ORIL's Administrator. Docket No. 56. The Plaintiff alleges in its brief that ORIL's Administrator signed the agency's documents that gave way to ORIL's attempt to exercise control over his milk quota; that such action violated his constitutional right to property; that his right to property and to file for bankruptcy are clearly established rights; and that the Administrator knew that his actions contravened with Plaintiff's constitutional right to property. Docket No. 58. The defendants responded that the actions of ORIL's Administrator were circumscribed to enforce the final administrative judgment by issuing an order to sell the quota. The defendants further argue that it is not clearly established that the Administrator could not enforce the final administrative judgment without violating the stay. Docket No. 59.

### IV. LEGAL ANALYSIS

<u>Violation of the Automatic Stay</u>

When a debtor files a petition for bankruptcy, the Bankruptcy Code protects the debtor's interests by imposing an automatic stay on efforts to collect prepetition debts outside the bankruptcy forum. <u>City of Chicago v. Fulton</u>, 141 S. Ct. 585, 589 (2021). Those prohibited efforts include "any act . . . to exercise control over property" of the bankruptcy estate. <u>Id.</u> Only three elements suffice to establish a viable claim for violation of the automatic stay. <u>Slabicki v. Gleason</u>, 466 B.R. 572, 577-78 (B.A.P. 1st Cir. 2012). First, that a violation of the stay occurred. <u>Id.</u> A violation of the stay occurs when a non-debtor takes an act to obtain possession of property of the estate or to exercise control over property of the estate. 11 U.S.C. § 362(a)(3). Second, the violation of the stay was willful. <u>Slabicki</u>, 466 B.R. at 577-78. A 'willful' violation of the stay, however, "does not require a specific intent to violate the automatic stay …[rather] … the standard

---

[1] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532.

for a willful violation . . . is met if there is knowledge of the stay and the defendant intended the actions which constitute the violation." Fleet Mortg. Group v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999). Accordingly, "[i]n cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." Id. Thirdly, that the violation of stay caused the Plaintiff actual damages. In re Kimbler, 624 B.R. 774 (Bankr. E.D. N.C. 2020); In re Ennis, No. 14-02188-5-SWH, 2015 WL 6555392 at *5 (Bankr. E.D.N.C. Oct. 28, 2015).

The Bankruptcy Code recognizes an exception to the automatic stay, known as the police power exception. Under § 362(b)(4) of the Bankruptcy Code, a party may bring a claim against a debtor despite the automatic stay provision of § 362(a) if the claimant acts within governmental unit or agency's police or regulatory powers. A proceeding brought against a debtor is excepted from the automatic stay if the state agency's power to revoke or suspend a debtor agent's license implements state policy.  McMullen v. Sevigny (In re McMullen), 386 F.3d 320, 326-27 (1st Cir. 2004). Courts look to the agency's ability to award damages or compensation and favor exception to the automatic stay when the proceedings primarily serve to protect the public in the future and not that of awarding monies. Id.

As discussed by the defendants in their motion for summary judgment, milk is a highly regulated commodity in Puerto Rico. Docket No. 45 at 7. As such, legislation has armed ORIL with regulatory authority to grant, suspend and revoke licenses of dairy farmers that put the public's health at risk.[2] Dairy farmers produce raw milk based on their participation within the total production quota issued in a fourteen-day liquidation or settlement period. 5 L.P.R.A. § 1126(b).

Milk quotas are personal intangible property, pursuant to sections 237, 245 and 256 of the Puerto Rico Civil Code of 2020. 31 L.P.R.A. §§ 6012, 6041 & 6063. "A dairy farmer's milk quota is an asset which can be sold, leased, or used as collateral for credit." Milk Industry Regulatory Office of the Commonwealth of Puerto Rico v. Rosa Dairy Farm, Inc., 622 B.R. 806, 808 (1st Cir. B.A.P. 2020)(citing 5 L.P.R.A. § 1135 & Regulation No. 8660, § 7). The Debtor stated in Schedule B of the bankruptcy petition that he possessed "56,321 liters of bi-weekly milk quota as recognized by ORIL." Bankruptcy Case No. 15-04548, Docket No. 1 at 10. As such, the property was listed as part of the bankruptcy estate.

Although ORIL is not a creditor in this case, the record reflects that it has actively participated in the bankruptcy case (Bankruptcy Case No. 15-04548). It is an undisputed fact that while the Debtor was in bankruptcy, ORIL was in the process of revoking his dairy farmer's

---

[2] ORIL was created by Act 34 of June 11, 1957, also known as Act to Regulate the Milk Industry. 5 L.P.R.A. §§ 1092-1118. ORIL is a dependency of the Puerto Rico Department of Agriculture.

license, pursuant to its regulatory powers. ORIL managed to revoke the license and the Plaintiff exhausted all his appellate remedies to no avail; thus, ORIL's revocation determination stands. We note that the examiner's official report in the administrative proceeding that revoked the Plaintiff's license states that this action is being taken to "ensure the general wellbeing and health of all consumers." Docket No. 46-1 at 17. At this point in time, ORIL was well within its regulatory police powers regarding the dairy license.[3] We point out that the dairy license and the milk quota, although related, are two different things. The milk quota is a personal property comprised of a right to produce a certain amount of milk as allowed by its established quota. The dairy license is a permit to produce milk granted exclusively to a dairy farmer. 5 L.P.R.A. § 1101.

The quarrel between ORIL and the Plaintiff took a turn in the wrong direction when ORIL decided to list the Plaintiff's milk quota for public sale in compliance with its own rules and regulations, after obtaining a final, firm and unappealable judgment. In going forward with this public sale, ORIL consulted the Plaintiff's creditor that held liens over the milk quota to learn the amount of the payoff. In doing so, ORIL established a parallel distribution scheme of property of the estate outside of the bankruptcy. In the notice, ORIL established a minimum bid for the quota and sought to auction it free and clear of liens. These actions constitute an act to exercise control or obtain property of the estate by a non-debtor. The first prong for violation of the automatic stay is satisfied. Because ORIL is a party in interest in this bankruptcy case and has knowledge that the Debtor is in bankruptcy and that he is protected by the automatic stay, the second prong of the violation of the stay is met.

As to the third prong, the Plaintiff alleges that he suffered damages and harassment as a result of ORIL's intent to auction his milk quota, given that he had to incur in legal fees to defend himself from these stay violations. The extent of damages, if any, by ORIL's willful action will be determined by the court in an evidentiary hearing.

The defendants allege that the actions taken by ORIL were within its regulatory police powers and as such, its actions are exempt from the automatic stay and there is no violation. This court is of the view that the police power doctrine's purpose is for cases where government has a

---

[3] The Plaintiff previously filed an adversary proceeding against co-defendants ORIL and the Puerto Rico Department of Agriculture for violation of the automatic stay. Adv. Proc. No. 18-00096. The case was dismissed with prejudice pursuant to a stipulation announced in open court that the Plaintiff's dairy license would be reactivated on a conditional basis up to the final administrative judgment of the proceeding that was taking place in ORIL. Docket No. 41. Later, a controversy arose among the parties as to the meaning of their agreement. The court explained that the administrative proceedings could continue until it became a final, unappealable and firm judgment. Bankruptcy Case No. 15-04548, Docket Nos. 112 & 116. ORIL appealed and lost before the United States Bankruptcy Appellate Panel for the First Circuit. Id. at Docket No. 164. ORIL has appealed the BAP's decision to the United States Court of Appeals for the First Circuit.

5

duty to protect the public. A review of the cases cited by ORIL show that they deal with instances in which government stepped in to enforce its authority for the wellbeing of its citizens, which is not the case here. For example, these cases discuss the following:

- An instance where a municipality enforced a judgment on a debtor for violating zoning laws. Cournoyer v. Lincoln, 790 F.2d 971, 975-76 (1st Cir. 1986).

- Removal of arrival and departure slots from an airport. In re Gull Air, Inc., 890 F.2d 1255 (1st Cir. 1989).

- Prosecution and restitution for unfair trade practices. In re Nelson, 240 B.R. 802 (D. Me. 1999).

- Fines and damages to a debtor for discriminatory conduct. In re Mohawk Greenfield Motel Corp., 239 B.R. 1 (Bankr. D. Mass. 1999).

- Environmental and consumer protection. Spookyworld, Inc. v. Town of Berlin (In re Spookyworld, Inc.), 266 B.R. 1, 9 (D. Mass. 2001).

- Fines for violating securities laws. DeSteph. Conn. Dept of Banking (In re DeSteph), 2009 Bankr. LEXIS 4006 (D.N.H. 2009).

- Prosecution of claims for unfair dealings.  Massachusetts v. New Eng. Pellet, LLC, 409 B.R. 255 (D. Mass. 2009).

- Termination of contract for noncompliance with regulatory requirements. Parkview Adventist Med. Ctr. V. U.S., 842 F.3d 757 (1st Cir. 2016).

- Jailing for contempt of court.  In re Birchall, 2007 Bankr. LEXIS 2309 (D. Mass. 2007).

The defendants point out that the court should look to two tests in deciding if ORIL acted within its police powers. These tests are: 1) the pecuniary purpose test; and 2) the public policy test. These tests require courts to assess the totality of the circumstances to discern whether a governmental action falls under § 362(b)(4) of the Bankruptcy Code or whether the same is simply a collection action. Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo), 537 B.R. 128, 143 (Bankr. D. P.R. 2015). "The governmental unit satisfies the 'pecuniary purpose' test if its actions were not brought primarily to benefit the government's pecuniary interest." Id. Under this test, "the exception does not apply if the government takes legal action to advance its own 'pecuniary' interest (or perhaps the pecuniary interest of others)." Spooky World, Inc. v. Town of Berlin (In re Spookyworld, Inc.), 346 F.3d 1, 9 (1st Cir. 2003). The public policy test, focuses on "whether the government is primarily trying to 'effectuate public policy' or to adjudicate private rights." Montalvo, 537 B.R. at 143.

We find that ORIL does not meet the pecuniary purpose test. A review of the "Service of Process of Sale of Quota at Public Auction" shows that ORIL established a minimum price for the

milk quota; advised that the quota might be awarded to the creditor (ACM) if no bid or award is made; and expressed that the proceeds of the sale are to be used to pay the Plaintiff's debt to ACM. Docket No. 46-10. While ORIL was not set to profit from this sale, it advanced ACM's pecuniary interest, by putting in motion a mechanism that would quickly satisfy this creditor's debt outside of the bankruptcy court.[4] Under this same test, we look to see if the action was taken to "enforce a matter of public safety and welfare" as discussed in Montalvo, 537 B.R. at 143, but we fail to find any.

Under the public policy test, we also do not find allegations or evidence in the record that support that ORIL was effectuating public policy rather than adjudicating private rights. Rather than explain why a public sale that would result in the satisfaction of ACM's debt is in the best interests of the citizens of Puerto Rico, ORIL plainly discusses health concerns that we believe were already addressed when the Plaintiff's dairy license was revoked. ORIL also fails to demonstrate how its actions relate to the case law examples it brings before the court. An examiner in the administrative proceeding that revoked the Plaintiff's diary license expressed that his recommendation to revoke the license would result in the well-being of milk consumers. Once the Plaintiff's license was revoked, he was unable to sell his milk and there was no further risk to the public. He has remained owner of the milk quota, which in turn is property of the estate. We do not see how the sale of a quota, that is useless in the Plaintiff's possession without a dairy license, would help to protect the health of the citizens of Puerto Rico and the environment. The cases cited by ORIL do not deal with an act to collect or to exercise control over property of the estate. ORIL exercised control of property of the estate and was going to distribute it outside of the bankruptcy process.

Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231(2009)(citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity is a judge-made doctrine created to limit the exposure of public officials to damages actions, thereby fostering the effective performance of discretionary functions in the public sector." Pagan v. Calderon, 448 F.3d 16, 31 (1st Cir. 2006)(citing Harlow, 457 U.S. at 807). "Qualified immunity

---

[4] ORIL sought from ACM the unpaid balance owed by the Plaintiff prior to scheduling the public sale. Docket No. 46-9.

7

balances the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231. "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. Qualified immunity "protects all but 'the plainly incompetent [and] those who knowingly violate the law.'" Pagan, 448 F.3d at 31 (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)). Public officials "who, from an objective standpoint, should have known that their conduct was unlawful" are not shielded under qualified immunity. Id. (citing Davis v. Scherer, 468 U.S. 183, 193 (1984); Surprenant v. Rivas, 424 F.3d 5, 14 (1st Cir. 2005)).

In the First Circuit, a plaintiff that seeks to demonstrate that a government official is ineligible for qualified immunity must establish that (i) the official's actions are a constitutional violation; (ii) the constitutional right was clearly established at the time of the violation; and (iii) "whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Pagan, 448 F.3d at 31.

The Plaintiff maintains that ORIL's Administrator must be held personally liable for the actions he took in his official capacity because his constitutional right to property was violated; that his right to property is clearly established; and that the Administrator knew that he could not interfere with his property rights. We disagree with the Plaintiff and hold that ORIL's Administrator enjoys qualified immunity because the United States Supreme Court has determined that it applies "regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231.

The first prong is met if the Plaintiff proves that his right to property was violated. Because we find that the listing of property of the estate in the form of milk quota for public sale was a violation of the automatic stay, this prong is met. The second part of the test requires the Plaintiff to show that his right to property is clearly established. The court finds that the Plaintiff's right to property is a clearly established constitutional right embedded in the Fifth Amendment to the Constitution of the United States and therefore, this part of the test is met. U.S. CONST. amend. V. Regarding the third prong, the Plaintiff must show that a reasonable officer similarly situated to the Administrator would have understood that his acts contravened the Plaintiff's property right. We cannot find that ORIL's Administrator necessarily understood that his acts were in the wrong since he was procuring the execution of his agency's judgment.

8

A review of the bankruptcy and the first adversary proceeding filed against ORIL show that the agency, through its Administrator, was investigating and evaluating corresponding actions to be taken regarding the Plaintiff's behavior in the milk industry. The Plaintiff agreed with ORIL in Adv. Proc. 18-00096 to be allowed to use his dairy license to resume his milk producing operation until the administrative adjudicative process finalized. The examiner's report recommended that the Administrator revoke the Plaintiff's dairy license. Docket No. 46-1. The Plaintiff's license was consequently revoked, and he did not prevail in his appeals. As such, ORIL set in motion its regulatory procedures to dispose of the Plaintiff's milk quota because this type of property cannot be held without a dairy license. Regulation 8660 of November 12, 2015, Section 7(C); Docket No. 46-11 at 16-17. There are two instances where we can identify the Administrator's participation in the listing of the milk quota for public sale: 1) an email sent to ACM's counsel, the creditor with a lien over the quota; and 2) the notice of sale of the quota at public auction. Docket Nos. 46-9 & 46-10.

During the proceedings at ORIL, we see that the record reflects that other actors, such as the examiner, counsel for the agency, and a clerk of adjudicative proceedings, intervened in deciding applicable administrative law in the license revocation and milk quota disposal matter. Docket Nos. 46-1, 46-5, 46-7, 46-8, 46-9. We see nothing in the record that shows that ORIL's Administrator went out of his official duties to interfere with the Plaintiff's property rights.

## V. CONCLUSION

For the reasons stated above, the complaint is dismissed as to co-defendants Jorge Campos Merced, Vanessa Diaz Rodriguez, and their legal partnership. The Plaintiff's motion for summary judgment is partially granted (Docket No. 49) as to liability for violating the automatic stay with respect to the remaining defendants. The defendants' motion for summary judgment is denied (Docket Nos. 45).

An evidentiary hearing will be held to determine damages, if any, regarding the violation of the automatic stay. A separate pretrial order will be entered on the docket.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 23rd day of December, 2021.

*Mildred Caban*

Mildred Caban Flores
U.S. Bankruptcy Judge

9